Good morning. The court will call the first case, agenda number 114463. People of the State of Illinois versus Derrico G. Are you ready to proceed? Good morning, Chief Justice, Your Honors. My name is Veronica Calderon-Malavia. I am a Cook County Assistant State's Attorney representing the people of the State of Illinois in this matter. We brought this appeal before this court because the trial court incorrectly found that the juvenile supervision statute was unconstitutional because it required the State's Attorney to consent to a continuance under supervision. Disregarding this court's precedent, the trial court erroneously found that this approval provision was invalid on separation of powers, equal protection, and due process grounds. On appeal, while Respondent attempts to justify the trial court's ruling, he also tries to shield it from review by claiming that the issues are now moot. According to Respondent, the 2014 amendments to the supervision statute remove the approval provision  Respondent is wrong. The 2014 amendments retain the pre-finding State's Attorney approval provision, which is at issue here. The only difference in the 2014 statute is the addition of a post-finding section that allows a trial judge to continue a case under supervision after a finding of guilt and without the consent of the State's Attorney. What about the expiration of the 18-month period of supervision? Does that render this moot? No, it does not. Respondent has conceded that he's still on supervision due to subsequent violations that were filed in this case. So neither his case did not terminate, he's still on supervision, and the 2014 amendments do not render the issues moot. Under either the instant version or the 2014 version, the approval provision is found in identical form, and therefore the issues before this Court are definitely not moot. Turning to the constitutional merits. First, as to the separation of powers, the claim has already been rejected by this Court's decision in T.W. In T.W., this Court looked at a similar provision and found that the statute did not violate the separation of powers clause. More specifically, this Court found that the approval provision did not infringe on the trial court's sentencing powers. Your Honors, T.W. is correct because it respects our separation of powers clause. It recognizes the distinct constitutional roles of the executive and the judiciary. In doing so, it protects, in the pre-finding stage, the State's attorneys' wide discretion to initiate and manage their delinquency cases, consistent with an executive role. Your Honors, authority to object to supervision is an essential part of that discretion at the pre-finding stage. So the inclusion of the State's attorney in the approval provision did not create a separation of powers problem. It, in fact, avoided one by protecting the State's attorney's right to initiate and manage her cases. Does the section really, though, give the State's attorney the power to veto judicial authority? It gives, in order for supervision to be permitted at the pre-finding stage, which, we must remember, it could result in outright dismissal of the case, the approval of the State's attorney is required, as well as the trial court, as well as the minor and the parents. So, yes, it does give the State's authority to prevent, in cases, prevent supervision. But it does so, in doing so, the legislature is protecting the role of the State's attorney to initiate and manage cases because a continuous under supervision would successfully result in dismissal of a case. How do you address the Respondent's argument, Counsel, that the statute in T.W., as well as the now amended section 5.6.15, specifically allows a trial court to enter a continuance under supervision after a finding of guilt and without the State's consent? I think they make that argument to say this conforms that a continuance under supervision is an exercise of sentencing power. It is not. The 2014, if you look at them, there's two sections. The first section deals with a pre-finding stage, and that's where the State's attorney's approval is required because it could end up in the dismissal of a case. Once there's a finding of guilt, then the sentencing powers of the trial court is triggered, and the legislature, rightly so, did not put a State's attorney approval provision there. Therefore, the 2014 amendments respect this Court's decision in T.W. by permitting the State's attorney to have an approval at the pre-stage. However, once it moves to the, once there's a finding of guilt, then it triggers the sentencing powers of the trial court. So your position is it actually, that argument actually supports you then? It definitely supports me. In light of the fact that the State's attorney do not have the right to protest after the finding? After the finding of guilt. But here, that's not what's at issue. Here, we're at the pre-finding stage. The Court withheld the finding of guilt, and it's still at the pre-finding stage. And what is at issue here is the State's attorney's right to withhold consent. And one of the reasons the trial court found it unconstitutional is because it violated the separation of powers. But this Court has already rejected that in T.W. And the 2014 amendments do not provide any basis for this Court to revisit, much less reverse T.W. Let me ask you a question. We use the term supervision. The statute uses the term supervision. And in the T.W. case, this Court looked to the Phillips case and seems to say that the pre-finding supervision is more like diversion, as the Phillips case found. Now, with the amendments, there are the term supervision is used both pre- and post-finding. Is there any practical effect that's any different? Are juveniles who are, let's say, diverted without having a finding made, are they treated any differently from juveniles where there is a finding and then the judge places the minor respondent on supervision? Is there any difference qualitatively between the two? Well, procedure-wise, right, if a case, if let's say a minor violates supervision at the pre-stage, then the case has to move to finding, adjudication, and sentencing. However, after the finding, it would just move to sentencing. So there is a procedural case. And the supervision at the pre-finding stage would result in outright dismissal of a case. Well, after the finding, the minor would have to move to have his delinquency vacated if he successfully completed supervision. So there are distinctions. So before the pre-finding, the minor respondent is placed on supervision, whatever that means. And if there's a violation, then the case basically goes to trial. There could be a finding of not delinquent. That is one of the options. Of course, the trial court could also extend the supervision. But, yes, then if that's not, it would go to trial, to a finding. And therefore, that's why it's important to have the State's attorneys input there, because it could result in a, you know, once a successful and outright dismissal of a case. And it's important to note that the legislature, by placing the State's attorney in there and requiring both the trial court and the State's attorney to agree to supervision, it was ensuring that only those candidates who were most suitable and most likely to succeed would get supervision. Clearly, the legislature did not want supervision at the pre-finding stage to be the norm, but it wanted it to be reserved for those minors that would be the most successful in completing supervision. The trial court's equal protection ruling should also be reversed. The trial court's analysis was fundamentally wrong, because respondent cannot meet the threshold requirement that is similarly situated to an adult offender. Your Honors, an adult offender facing a felony is not eligible for supervision under the adult statute. So there is no adult class to compare to. If adults and minors were similarly situated in this context, then an adult could demand the same protections that a juvenile has, including supervision prior to adult supervision statute. But even assuming a respondent here can meet the threshold burden, requiring the State's attorney to consent to a continuance under supervision is rationally related in furthering the juvenile court's purpose and goals. As I stated, by requiring the consent of both the trial court and the State's attorney, the provision ensures that supervision will be given to those minors who are most likely to succeed. Therefore, it strikes a proper balance between identifying a suitable candidate for supervision and, at the same time, those who are not suitable for supervision and, therefore, protecting the public. There's just simply no equal protection violation here. Finally, with respect to due process, the facts of this case prove that there was no due process violation. Here, the prosecutor's objection was not arbitrary. Rather, the decision was objectively reasonable based on the individual assessment of respondent and his circumstances. When objecting to supervision, the prosecutor knew that defendant had a violent past. At the age of 12, two years before this case, he was arrested for aggravated battery with a weapon other than a firearm. That case was screened out of court. The ASA also knew that this matter involved two unrelated felonies committed within three weeks of each other. The first was possession of cocaine charge, where the minor was caught on the street selling crack cocaine with multiple packets of cocaine on his person. That charge was nollied with pursuing the plea agreement in this case. But while that drug case was pending, and on the date that he failed to appear in court on that case, he was arrested for aggravated battery of a peace officer. Therefore, the commission of these two felonies within a three-week period calls into question whether respondent can conform to the law. Under these facts, it's difficult to conclude that this minor is unlikely to reoffend. Moreover, the social investigation supported the assistant state attorney's basis for objection. The minor was not getting sufficient... Would the defendant say true that the state's attorney objected to supervision in any case where the minor was charged with a felony? I think they seem to be saying that there's no... You went into the facts of this case as it related to this minor. I think part of their argument with respect to due process is that there wasn't any meaningful discretion done by the state's attorney's office. So maybe in this particular case, you can go through chapter and verse of how it related to this particular minor. But I think their argument is broader than that. And that is based on a statement that an assistant state's attorney made below. But she was mistaken. And it doesn't accurately reflect the practice of the state's attorney's office. Let me be clear. The Cook County state's attorney's office does not have a blanket policy barring supervision in felony cases. What happens is when an ASA is confronted with a minor who would be a good candidate for supervision, that felony is reduced to misdemeanor and supervision is afforded. That way, if that minor violates, he also gets the added benefit of only being adjudicated of misdemeanor. That's not unfair. That's not arbitrary. There is no blanket policy. Could you be more clear here? I'm not sure I understood what she said. So you're saying the policy is if the state determines that a minor is an appropriate candidate for supervision, the state reduces the charge to a misdemeanor and then there's a finding? No. I'm saying, okay, the practice is you reduce it to a misdemeanor and the minor is given supervision. However, let's say the minor does not succeed in supervision. He would only be adjudicated of a misdemeanor. Therefore, he gets the added benefit of that. Therefore, there's nothing arbitrary or unfair about the practice. And that is my point. Let's say it was as the minor's attorneys have proposed. Would there be a prejudice argument that you would make in that case, that there wasn't any prejudice even if there was that policy? Because in this case, in light of the history of this particular minor, it was reasonable anyway? My first argument would be that the trial court's decision that ruling was not based on a blanket policy. It was based on assessment of this case. So that would be my first question. And if you look at the record and the motion to reconsider followed by the state's attorney, it was based on the individual assessment of the minor here. So there is no policy and there is no evidence that in this case, that the minor's circumstances and background and the nature of the offense here was not considered in the objection of supervision. It was the assessment of this particular case which led to the objection to supervision. And as the prosecutors were correct in concluding that due to his age, the respondent did have potential for rehabilitation. But they were also correct in recognizing that supervision was not suitable because the minor was not provided the necessary structure, support or accountability that he needed, especially at home, which is made evident in the social investigation. The evidence overwhelmingly rebuts the trial court's finding that the people's objection was arbitrary. At the end of the day, the statute here strikes a proper balance between the executive and the judiciary's role and powers and execution of their powers. It fosters the goals of the Juvenile Court Act by including, by making sure the public is protected for minors who are not suitable for supervision, not to be placed on supervision. The proof of provision contained both in the current version and the amended version is constitutional. And the people asked this court to reverse the trial court's decisions that were to the contrary. You rely on Danielle J. Isn't that case distinguishable from this one? The circuit court here timely approached the subject of the provision. Does that distinguish? We agree that the trial court timely approached the issue of supervision and that there is no standing issue as there was in Danielle J. The court, you know, pursuant to Veronica, Veronica C. had the right to broach supervision before there was a finding of guilt and there was no finding of guilt. And so in that sense, the topic of supervision was broached properly and the minor had standing to raise his constitutional issues here. Thank you. Counsel for the appellee. May it please the court. My name is James Jacobs of the Cook County Public Defender's Office representing Respondent Appellee Derek Ogee. Well, it's taken three prior cases and almost six years, but we're finally here today to resolve the question of whether T.W. and the constitutionality of the supervision statute is sound. The trial court found the state veto power of supervision statute, which is 5, 6, 15, unconstitutional for three bases, separation of powers, equal protection, and due process. The separation of powers argument is that the trial court found that the supervision statute and the veto provision impinged upon core judicial power. And as this court held in People v. Joseph, if power is judicial in character, another branch is expressly prohibited from exercising it. And the core judicial powers are the power to adjudicate upon the rights of citizens, the power to enter a disposition, and the power to sentence. In re T.W., this court only compared the state's veto power in the juvenile supervision statute to the probation officer's veto power to a drug addict's treatment under what has become known as TASC. This is People v. Phillips from 1977. Phillips involved an unsuccessful separation of powers challenge to the requirement that if a person was already on probation or parole, that the consent of the monitoring probation or parole authority would be required to elect treatment under TASC. T.W. reasoned that if the probation officer's veto to drug treatment did not impinge upon core judicial power, that the state veto power in 5, 6, 15 did not impinge upon core judicial power. But T.W.'s analogy is not well taken and should be reexamined. And a good place to start is this Court's decision in People v. Xrel-Stralka, Divine v. Stralka from 2007, the concurring opinion of three justices of this Court, which found that T.W. should be reevaluated. Now, there's nothing wrong with this Court's decision in Phillips. It rests on well-reasoned realities about drug addicts and their treatment. Drug addiction is recognized by the legislature to be a disease that requires treatment, not punishment. It is a condition that can be cured only if the person is a good candidate for treatment. And this determination is best left to trained professionals. In fact, in this case, Justice Sharkey or Judge Sharkey asked the probation officer to evaluate Derrico for drugs, and only then did he withhold judgment as to whether drug counseling would be part of his sentence. Deferred to the expertise of the probation officer, as is appropriate in Phillips. So essentially, you have the treatment of a disease by professionals who are trained in that, trained to treat that disease, versus an adverse party to the litigation. The problem with the analogy between Phillips and the supervision statute is the roles and responsibilities of the respective parties are so divergent. The State's goal in the process is to punish the minor, is to hold them accountable for wrongdoing. And as this Court has well acknowledged in previous occasions with respect to the 1999 amendments to the Juvenile Court Act, the Juvenile Court Act has become much more punitive in focus. Mr. Jacobs, wouldn't this Court have to find this supervision to be a sentence for a separation of powers argument to persist? I don't think so. Supervision is called a disposition. In the case of People v. Breen from 1976, this Court held that in reality it is a penalty in Urbana v. Andrew N.B. from 2004. This Court held that supervision is a judicial act of disposition. Now, supervision operates like a sentence because of the way that it's imposed and how in the process that it works. In a plea context, which is what we have here, supervision only comes after there's been a charge, a review of discovery, discussion between the parties of the evaluation as to whether to take the case to trial or not. And then there are the admonishments that the trial court has to give the minor to determine that he recognizes the rights that he's giving up, trial, self-incrimination, the right to plead not guilty and the right to a trial. And then the court determines whether a crime has been committed and the minor actually committed it. And it is only at this point that the prospect of supervision as a disposition is arrived at. Now, all that ---- But no finding of guilt. No finding of guilt, but a finding that there's a factual basis for wrongdoing, that the minor committed it, and that that crime has been committed. I don't know that you can categorize that entire process as being anything other than a full-blown criminal proceeding. And as this Court observed in In Re. J.N. from 1982, while supervision, quote, purports to be a ---- or continuance ---- while supervision purports to be a continuance, in substance and reality, it constitutes a final judgment. Now, the State's argument that placing someone on supervision is the equivalent of initiating or managing the criminal litigation does not ring true because supervision arises only after there has been an initiation and all the case management is complete. The States decide to go forward with the charge. The judge has to determine whether it has merit and then fixes an appropriate disposition. The consent provision that's involved here involves not only the consent of the State's attorney, but of any other party, including the minor. Doesn't that augment in favor of an argument that says this is not a sentencing procedure because how can a minor or how can a defendant object to a sentence that a court is going to approve? Well, I don't think so. I don't think so, Your Honor, because that's essentially what happens in any criminal case is that a ---- when someone decides to plead guilty, is they are consenting to submit themselves to the judgment of the court and relieve the State of its burden of proof. So the consent provision in the juvenile supervision statute I don't think is that much different than asking the defendant in a regular criminal case. Has your argument lost any of its luster because of the amendment that allows a court to place a minor on supervision, traditional like adult supervision, after the finding of guilt? I don't think it's lost its luster. I think it's rendered it practically moot, if not actually moot, because judges and defense attorneys are smart enough to read between the lines and know that if they ---- if the State is going to object to supervision, that they can just take the case to trial or have a stipulated bench trial and reach the same result. And, in fact, in T.W., which this Court should reexamine, this Court also acknowledged that if a ---- if a probation officer did not want to give treatment, that the judge could work around it and make treatment part of the probation that was given. So I believe that as a practical matter, this issue is ---- will not come before this Court again. But I also think that even the part of the new statute, which obviously is not before this Court, but also as a practical matter, if you find that the old statute is unconstitutional with respect to the pre-findings, then that issue is not going to come up again either. But I think the pre-findings State veto is also unconstitutional because it is a sentence or it is a disposition, and that implicates core judicial power. And I believe that T.W. was ---- the analogy that T.W. raised was in a ---- was misguided. And when you look at what the purposes and the roles of the parties were with respect to a probation officer who is treating a drug addict versus a State's attorney who is ---- really wants to win and is really fighting to hold the minor accountable, I think that that's not a good comparison. And a ---- Kennedy, is it your position that there is no practical difference between the continuance under supervision and the supervision granted by a judge after a finding of guilt? The State indicated the differences are procedurally, automatic dismissal of the charges if it's a continuance under supervision, as opposed to the minor having to move for dismissal upon successful completion, and then the ramifications of ---- I don't think there's any ---- Or are there no differences? I don't think there's any difference between supervision granted pre-trial versus supervision granted after trial with respect to the conditions. And, in fact, there's no difference between supervision and probation with respect to how it actually works. The probation officer and the judge are as involved with supervision as they are with ---- as they are with probation. There are some distinctions, certainly. In terms of, let's say, probation, successful probation completion ends with successful probation completion. A successful supervision under the new statute after a finding, the original finding is vacated, maybe? But then in the ---- before the finding, a successful completion of a continuance under supervision means the case is dismissed. So in some, maybe not practical ways, but in some theoretical ways, there certainly are some differences. No, and I certainly did not mean to imply that. What I meant is the way that the probation officer is acting in dealing with his caseload is the same with a ---- same dealing with the minor in a probation context versus a supervision context. The differences between what happens after the supervision is completed versus probation are, Your Honors, just articulated, and those are also articulated in re-stalker. There are differences there, but just as a practical matter of how they operate, Your Honor asked a question about whether there was a difference between pre-finding supervision versus post-finding supervision and the way they operated. And they operate the same. Moving on to ---- I believe that the juvenile ---- the State veto power, even under the old statute, still should be reviewed because I believe a trial court is a more appropriate party to make that determination. State's attorneys are subject to more political pressure. Courts are subject to political pressure, too, but State's attorneys are subject to more political pressure to be tough on crime and to aggressively prosecute cases. And I believe that that type of focus, as much as it can be removed from the process, especially for a minor and especially for supervision, it's a good idea to do so. With respect to equal protection, the first question is whether these parties are similarly situated. Now, granted, an adult in D'Errico's situation would not be eligible for supervision because felonies are not eligible for supervision in the adult system. But the point is, the perspective that this Court needs to look at it is, are these two ---- is an adult eligible for supervision and a juvenile eligible for supervision? D'Errico was eligible for supervision and the State veto power applied to him, but would not apply to an adult that was eligible for supervision. So that is ---- so they are similarly situated in that respect. So then we move on to, is there a rational basis for this distinction? And the Juvenile Court Act makes very clear in many places that in having its own equal protection type statute in 5103 ---- 5101 paren 3, that juveniles are to receive all the same procedural protections as adults unless they're granted greater protections. So there is no rational basis to treat juveniles and adult ---- a juvenile more harshly than an adult. And that ---- Kennedy, but supervision is not available for a felony in an adult case. Is that true? D'Errico, that felon ---- it's not for adults and felonies, yes. But the similarly situated aspect that I'd like this Court to focus on is that you have an adult who is eligible for supervision and a juvenile who is eligible for supervision. Is that correct? That's correct. That's correct. But you ---- D'Errico was eligible for supervision. So you have ---- you compare an adult who is eligible for supervision and a juvenile who is eligible for supervision, and there's ---- the only difference between them is the State has a veto power in the juvenile who is eligible for supervision, but not the adult who is eligible for supervision. It's not as good a case as the last three that were up here, Daniel J., Tyrese C., Veronica C. It's not as good as those. But the argument, I believe, that they are similarly situated is well taken. And I believe you could still reach the merits on that. No rational ---- Let me ask you, right before you get to your last point, are these constitutional challenges as applied or facial? Well, with respect to the separation of powers and the equal protection, I believe they would be facial challenges. The due process would be as applied. And with respect to Justice Thomas's case ---- Justice Thomas's question about was there a blanket policy, I'd just refer you to the record R2, page 21, and R1, page 75. Those are the two places in the record that I believe that the State indicates that it does have a blanket policy of objecting to probation for all felony juvenile cases. And finally, the legislative record does not ---- With regard to the last point, if the State's procedure is they do object to felony continuance under supervision, but as counsel for the State indicated, if they think an individual is eligible, they reduce it to a misdemeanor. Is that still a policy of objecting to supervision in all felony cases? Well, I don't ---- I think that the record reflects that in candor that the State's attorney was objecting to supervision just because Derrico was charged with a felony. And that was at the first instance. But the legislative record also does not support a rational basis. It's a very compelling and interesting legislative record of that the reason why the Court rejected the juvenile supervision statute was because Richard Daly brought a bill to the legislature because he didn't like the way the Cook County judges were making decisions in individual cases. So you have the legislative branch and the executive branch inspiring to wrest what is core judicial power from judiciary. And so there's no rational basis to support treating juveniles more harshly than adults. So I'd ask this Court to affirm the decision of the trial court and find the juvenile supervision statute unconstitutional. But, Mr. James, let me ask you this. The two record sites you gave us? Yes. They support ---- I mean, factually, what's in the record that supports your argument? They support the policy of the State's attorney's office. But what is it in the record? What does it say when we look at those pages? What's the specific evidence? It's the State is the judge first broached whether the minor was ---- could get supervision. And they said, no, can't get supervision. It's a felony. And then later, that was the first instance. And then ---- I mean, is that it on that page? Just the statement by the ASA? I believe so. And then the second reference I don't have as handy in my head as that first reference. But I believe that they pretty clearly say we're objecting to this because he's charged with a felony. A lot of other things, too, but the felony. But how does that support the conclusion that there is, in fact, a policy as opposed to that's the position of the ASA at that moment in time based on whatever the facts are in that case? Well, because I think it was more categorical than that. It just can't be supervision because it's a felony. All right. Well, the record is what it is. The record's right. The record. Yes, Your Honor. So I affirm the decision of the trial court. Thank you. Thank you, counsel. Your Honors, objection based on a felony and a lot of other things, too, do not support a blanket policy. The record is clear that the state's attorney below objected because the minor had committed two felonies in a closed period of time and looked into the nature of those felonies. An aggravated battery of a peace officer and selling crack cocaine in the middle of the street. Those were the basis for the objections. Some of the other things that were considered. Additionally, supervision at the pre-finding stage is not a judicial sentence. It's more like a diversion. There is no finding of guilt. It can't be compared to a plea. When you get a plea, you have a finding of guilt, a judgment, a sentence. It can't be, so it is at the, it is not a sentence. And therefore, it comes into the preview of the state's attorney's initiation and management of the cases at the pre-finding stage. Once there is a finding of guilt, then it is a sentence and then it becomes, goes into the province of the trial court. And the 2014 amendment protects that. Additionally, another difference between the pre-supervision and the post-supervision. In the post-supervision, the trial court is required to make some prerequisite findings. It is required to find that the minor is not likely to commit further crimes. The trial court is required to find that the minor in the public would be best served if the minor would not receive a criminal record and that it would be in the best interest of justice that an order under supervision is more appropriate than a sentence otherwise permitted by the act. So there are, there are differences because, in between the pre- and the post-findings. Matters, the state's attorney's goal is not just to punish the minor. Of course, the state's attorney will also benefit when a minor who is likely to succeed receives supervision and complies with the conditions of those, of supervision. And here, the state's attorneys properly assess the situation and objected to supervision and recognized that the minor was, did have ability to rehabilitate, but that he needed the structure and the support and accountability that it was based, that he would get in probation. And probation and supervision are not the same thing. There's different, there's a different process, a different process. There's different accountability. In the, in with supervision, the minor is basically left on his own with his parents. That's why it's necessary to have the minor's consent as well as the parent's. Because they will, they, during, the minor during the environment, the environment at his home, the parents will ensure that he complies with the conditions of supervision. While in, under probation, the minor will be assigned a probation officer who will, he will need to check in with. So there are stark differences between both. So there's no social service involvement with the supervision? There can be. And if, you know, and there can be, he can receive certain services if there are needed. However, it's at a pre-finding stage before sentencing and it's, there may, the investigation might be as thorough. Things may come out in trial that, you know, that would change the treatment that the minor would be given at supervision, at post-trial. Ms. Calderon, following up on Justice Tice's question, does the respondent have to check in if he's on supervision, if he has services, or does anyone check on how he's doing during one situation, you know, from the beginning to the end? I'm not familiar with the exact process and I know I, he, the case is continued and the court does monitor. The court monitors through who? Through the probation officer. You know, like, if the minor just fails to go to school, of course the probation officer will be notified. So there is a probation officer assigned? Yes, there is a probation officer. So in both situations, supervision as well as probation, there is a court-appointed probation officer assigned to that respondent? I believe so. And so that probation officer would be responsible to follow up? Yes. So what is the difference between the probation officer's responsibility, probation versus supervision? I'm not sure, but it's not as intense in supervision as it would be in probation. So it could be the same? But, of course, he has the duty to make sure that the minor is complying with the conditions. And the most significant difference within supervision and probation is with probation there's a finding of guilt. Well, yeah, at the very end of the probation or the supervision, there's a determination at the end. But I'm just saying during the process, when someone is ordered on supervision or probation, what are the substantive differences that are for the respondent? That could be determined on a case-by-case. The trial court has the authority to place conditions. Okay. Additionally, there's no basis to re-examine T.W. This court recently re-examined the separation of powers clause and approvingly cited to T.W. and Phillips. And the 2014 amendments, again, were policy-based. There was no finding of unconstitutionality. And it's no different than the situation, well, it addressed the concerns that the justices in the concurring opinion in Starklaw had that a minor with a good behavior could not vacate a finding in delinquency. And, therefore, it's no difference than People v. Breen where this court prompted the legislature to enact an adult supervision statute because the trial court did not have the authority to place a defendant on supervision. Therefore, the 2014 amendments do not in any way establish that the pre-finding of state's attorney approval provision is unconstitutional. Therefore, we ask this court to reverse the trial court's rulings. Thank you. Case number 114463, People v. Darapogee, will be taken under advisement as agenda number one. Ms. Calderon-Malavia and Mr. Jacobs, you're excused. Thank you for your arguments today.